IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENDRICK ARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-124-KFP |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.   PROCEDURAL HISTORY

On August 19, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 3, 2015. R. 19. The state agency denied the application. *Id.* He then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 16, 2017. *Id.* Plaintiff, his counsel, and a vocational expert (VE) attended the hearing. *Id.* The ALJ issued a decision on October 27, 2017, finding that Plaintiff was not entitled to benefits. *Id.* at 19–29. Plaintiff requested the Appeals Council review the decision and consider additional evidence the ALJ had not considered. The Appeals Council granted Plaintiff's request and considered and exhibited the additional evidence. It issued its own decision on December 17, 2018, finding that Plaintiff was not entitled to a period of disability or disability insurance benefits. *Id.* at 1–9. The Appeals Council's decision is the final decision of the Commissioner. Plaintiff filed an appeal of that decision under 42 U.S.C. § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

A court's review of the Commissioner's decision is narrowly circumscribed, and its function is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). A court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "relevant evidence [a] reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir. 1993). If a court finds an error in the ALJ's application of law or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has an impairment that meets or equals a listing and meets the duration requirements; (4) can perform his past relevant work in light of his residual functional capacity; and (5) can make an adjustment to other work in light of his residual functional capacity, age, education, and work experience. *Evans v. Comm'r of Soc. Sec.,* 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that the work exists in significant numbers in the national economy. *Id.; Evans,* 551 F. App'x at 524.

## IV.   FINDINGS OF THE ALJ AND APPEALS COUNCIL

Plaintiff was 35 years old on his alleged onset date and 37 years old at the time of the ALJ's decision. R. 16, 149. He completed one year of college and has past work as an

auto mechanic, a medium skilled job. *Id.* at 28, 169. He claims he has been unable to work since March 15, 2015, due to multiple conditions, including degenerative disc disease, migraines, anxiety, depression, chronic pain, stomach ulcers, nerve damages, and sleep paralysis. *Id.* at 168.

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, hypertension, depression, and anxiety.[1] *Id.* at 21. She determined, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing of Impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526). *Id.* The ALJ then found that Plaintiff has the residual functional capacity (RFC) to perform a reduced range of light work, as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with a sit/stand option and limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. The claimant can never climb ropes, ladders, or scaffolds and must avoid concentrated exposure to wetness, noise, vibration, pulmonary irritants, and hazards. The claimant is limited to simple, routine tasks with short and simple instructions, simple decision, and few changes, that are gradually introduced. The claimant is further limited to occasional interaction with the public.

*Id.* at 24. Based on the testimony of the VE, the ALJ determined that Plaintiff could not perform his past relevant work as an auto mechanic (medium, skilled work) because he is limited to light, unskilled work activity. *Id.* at 28. The ALJ then found, considering the

---

[1] Plaintiff has the impairments of sleep apnea, headaches, stomach ulcer, pulmonary embolism, atrial fibrillation/cardiac arrhythmia, obesity, and carpal tunnel syndrome, but these impairments were found to be non-severe because they impose no more than minimal limitations, are episodic or do not meet the durational requirement, or are controlled or improved with treatment or medication. R. 4, 21. Plaintiff has made no argument about the nature of these impairments or their functional limitations in this appeal.

4

Plaintiff's age, education, work experience, and RFC, that the following jobs exist in significant numbers in the national economy that he can perform: mail clerk, checker, and office helper. *Id.* at 29. Accordingly, the ALJ concluded that Plaintiff is not disabled. *Id.*

The Appeals Council agreed with and adopted the ALJ's findings. *Id.* at 1–9. In doing so, the Appeals Council noted that the ALJ overlooked evidence from Neurology Consultants of Montgomery, P.C. (for treatment from June 2014–15) and Emory Healthcare (for treatment from November 2015–August 2016). *Id.* at 5. However, after reviewing the evidence, the Appeals Council found it to be consistent with the remaining evidence of record and the ALJ's findings and determinations. *Id.*

## V. DISCUSSION

Plaintiff raises three issues on appeal: (1) the Appeals Council erred by failing to adequately consider additional evidence not evaluated by the ALJ; (2) the ALJ erred in substituting her opinion for the opinion or diagnosis of a medical professional; (3) the ALJ erred in failing to obtain a medical expert opinion.[2]

### A.    Appeals Council's Consideration of Additional Evidence

In arguing the Appeals Council erred in consideration of additional evidence, Plaintiff cites case law discussing *when* the Appeals Council is required to consider additional evidence. Doc. 9 at 3–4. This is somewhat puzzling in light of the fact that the Appeals Council did consider the evidence. Other than these authority citations, Plaintiff's

---

[2] As the Commissioner notes, many of Plaintiff's challenges are directed at the ALJ's decision; however, the Appeals Council issued its own decision, which is the final decision of the Commissioner. To the extent the Appeals Council adopted the ALJ's findings challenged by the Plaintiff, the Commissioner addressed them as if they had been made by the Appeals Council. Doc. 12 at 5, n.3. The Court will do the same.

entire argument consists of two sentences: "This new evidence is in conflict with the ALJ's conclusions and demonstrates that Mr. Arrington has significant pain, swelling, inability to stand straight, fatigue, headaches, depression, anxiety, etc. Given the significance of this new evidence, which undermines the ALJ's findings and conclusions, the Appeals Council reversibly erred in failing to remand to the ALJ to address the new evidence." *Id.* at 5. Plaintiff cited no authority on the issue in this case (whether the additional evidence reviewed by the Appeals Council warranted remand), included no citations to the record, and failed to describe how the evidence support his claims, undermines the Appeals Councils' determinations, or even which determinations are allegedly undermined.

> "We have long held that an appellant abandons a claim when [she] either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *accord Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("As an initial matter, an appellant's brief must include an argument containing 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' Thus, an appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.") (citation omitted) (quoting Fed. R. App. P. 28(a)(9)(A)). Because Phillips has only raised this argument in a perfunctory manner without supporting arguments or authority, she has abandoned it.

*Phillips v. Soc. Sec. Admin., Comm'r*, 833 F. App'x 308, 322 (11th Cir. 2020); *see also Revel v. Saul*, No. 19-CV-248-N, 2020 WL 6472640, at *7 (S.D. Ala. Nov. 3, 2020) ("Given that review of a final decision of the Commissioner is the same in district court as it is in the Court of Appeals . . . the undersigned finds that [Plaintiff] has waived her claims of reversible error in the ALJ's decision by raising them in only a perfunctory manner without supporting argument.") (citations omitted). Because Plaintiff raised this issue in a

perfunctory manner without meaningful argument or citations to the record or relevant caselaw, the Court finds Plaintiff has abandoned it.

As a measure of caution, however, even if Plaintiff did not abandon this argument, the Court finds no grounds for reversal. In its decision, the Appeals Council described the additional evidence as follows:

> Exam findings in the records from Neurology Consultants of Montgomery, P.C. consistently show full motor strength, an intact sensory exam, a normal gait, and normal bulk and tone. December 2015 records from Emory Healthcare reflect the claimant underwent revision laminectomy six weeks prior at L4 and L5 with discectomy and reported his preoperative pain was improving slowly. X-rays demonstrated no evidence of postoperative slippage or malalignment of the lumbar spine (page 3). Exam notes from February 2016 were within normal limits other than right and left side weakened hip flexion and abduction, and left side ankle plantar flexion. Deep tendon reflexes, sensory index, straight leg raise, and range of motion were normal and motor strength was otherwise normal (page 15). Records from August 2016 reflect neurologic and musculoskeletal exams within normal limits (page 18).

R. 5. After an independent review of the record, the Court agrees that the additional evidence considered by the Appeals Council is consistent with the remaining evidence in the record and the determination that Plaintiff can perform a reduced range of light work. The records from Neurology Consultants include three visits for headache and back and leg pain in June 2014, November 2014, and June 2015. *Id.* at 959–75. The first visit followed Plaintiff's back surgery in May 2014 at the Laser Spine Institute in Tampa. *Id.* at 970. Although the records for all three visits document his subjective complaints, they show Plaintiff was in no obvious distress; had no problems with memory, speech, concentration, or attention; had full motor strength; had a normal gait, bulk, and tone; and had negative Romberg and Babinski tests. *Id.* at 960–74. Records from June 2014 visit

indicate Plaintiff could return to light duty for four weeks followed by full duty, and there is no record of any change in this opinion in subsequent records.[3] R. 970–74.

As for the records from Emory Healthcare, where Plaintiff was treated for leg, back, and joint pain from November 2015 to August 2016, Plaintiff again fails to identify any portion of these records that conflicts with the remaining evidence or undermines the Appeals Council's findings. At the initial visit in November 2015, Plaintiff reported back pain and demonstrated a slow, shuffling gait.[4] R. 981–82. A lumbar examination in December 2015 by Dr. Scott Boden, Chief of Neurosurgery at Emory, was predominantly normal but showed weakened hip flexion and abduction and a "slightly" positive Patrick's test bilaterally. R. 564, 997–98. An MRI in December showed moderate to severe central spinal canal stenosis of the lower lumbar spine with superimposed discogenic disease, most severe at L4–S1 levels. R. 1002–03. Dr. Boden recommended and performed a revision laminectomy in December 2015. *Id.* at 987. At the six-week follow-up in February, Dr. Boden noted that Plaintiff's leg pain was improving slowly and that he was walking better than before surgery. R. 978. An x-ray revealed no evidence of post-operative slippage or

---

[3] Although these records from Neurology Consultants were not reviewed by the ALJ, she did review records from this provider for an office visit in August 2013, an MRI report from November 2014, NCV and EMG results from June 2015 showing bilateral L4–5 radiculopathy, NCV and EMG results in September 2015 showing moderate carpal tunnel syndrome, and records from March and May 2016. R. 379–80, 408–09, 458–60, 539–42, and 649–62. The most recent records, which post-date the overlooked records and a December 2015 revision laminectomy, reflect the same normal findings above regarding strength, range of motion, and gait, in addition to referrals for a sleep study and carpal tunnel syndrome. *Id.* at 649–662. Dr. Jamsek's notes from November 2016 indicate that the carpal tunnel "self-resolved." *Id.* at 564.

[4] Records from his examination at Emory Healthcare in December 2015 show tandem gait difficulty but an otherwise normal gait. R. 985. Records from Neurology Consultants from June and November 2014 and June 2015 show a normal gait, as do records from Dr. Chamnon from March 14, 2016, and Neurology Consultants on May 25, 2016. R. 659, 798, 960, 968, 973. Records from Neurological Care Center on July 19, 2016, show a normal gait and normal toe and heel walking. R. 790, 798.

malalignment of the lumbar spine following decompression. R. 978. By March 2016, three months past surgery, Dr. Boden noted that Plaintiff's "preoperative radiating leg pain is better," and his only plan was to see the Plaintiff again in nine months for a one-year follow-up. R. 990.

The remaining records from Emory Healthcare for treatment in May and August 2016 are unremarkable. In May, Plaintiff saw Dr. William Blake, an infectious disease specialist, for an evaluation of "diffuse pains." R. 1000. He reported to Dr. Blake that he had been diagnosed with possible Lyme disease. *Id*. However, based on Plaintiff's test results, Dr. Blake stated, "My suspicion is that his illness is not compatible with Lyme disease given his time course of illness relative to when the IgM is positive on this exam." In August, he saw Dr. Ayele, a rheumatologist, for joint pain. R. 993. Upon examination, Dr. Ayele noted, "I doubt his symptoms and his nodules are rheumatoid nodules given no inflammatory arthritis signs on exam. There are no stigmata of SLE or other autoimmune connective tissue disease. His rheumatoid factor done in 03/2016 was slightly elevated, nothing significant. His repeat rheumatoid factor here at Emory was negative. His ENA-panel and dsDNA are also negative." *Id*. Additionally, the Plaintiff's physical examination at this visit revealed that he was in no acute distress and had full muscle strength throughout, normal range of motion, and no tenderness or swelling. R. 993.

For these reasons, the Court finds that the additional records from Neurology Consultants and Emory Healthcare are consistent with the remaining evidence of record and do not conflict with the determination that Plaintiff can perform the reduced range of light work as determined by the Appeals Council.

**B.     Appeals Council's Determinations Regarding Lyme Disease and Rheumatoid Arthritis**

Plaintiff argues "the ALJ erred in finding Lyme disease and rheumatoid arthritis not to be medically determinable impairments." Doc. 9 at 5. This statement in Plaintiff's brief is the first and only mention of rheumatoid arthritis. As explained above, when a claimant makes only a passing reference to an issue or raises it without supporting arguments or authority, it is abandoned. The brief contains no specific contentions about rheumatoid arthritis and no citations to legal authorities or parts of the record on which he relies. Stating that an issue exists without further argument or discussion constitutes abandonment of that issue and precludes consideration of it on appeal. *Phillips* 833 F. App'x at 322. Therefore, the Court finds Plaintiff has abandoned any argument with respect to rheumatoid arthritis.

Despite this abandonment, the Court has reviewed the record and finds it does not support Plaintiff's contention of error. The record reflects multiple instances when Plaintiff reported to his doctors that he has rheumatoid arthritis, but more than one doctor told him he did not. As mentioned above, Dr. Ayele at Emory told Plaintiff in August 2016 that he did not have rheumatoid arthritis. Plaintiff was also seen by Dr. James Smith, a rheumatologist at UAB, whose evaluation showed no evidence of an inflammatory, arthritic condition or evidence of synovitis to indicate rheumatoid arthritis. R. 795. Therefore, substantial evidence supports the determination that Plaintiff does not have rheumatoid arthritis.[5]

---

[5] It appears that Plaintiff also saw Dr. Jakes, a rheumatologist in Montgomery in April 2016, but the records are unclear. R. 555. Dr. Ayele, Jackson Hospital and Clinic, and Neurological Care Center of Montgomery documented that Dr. Jakes also told Plaintiff he did not have rheumatoid arthritis. R. 668, 789, and 991.

As for the argument concerning Lyme disease, Plaintiff argues that he has been treated at the Jemsek Specialty Clinic for "suspected Lyme borreliosis complex," and he includes a quote from Dr. Jemsek's website indicating that fewer than one out of two people who have Lyme disease test positive. Doc. 9 at 6. He also notes that Dr. Jemsek was "highly suspicious that [Lyme disease] is playing a role and that [Plaintiff] would benefit from further evaluation and antimicrobial therapy." *Id.* Plaintiff then claims the ALJ "blatantly and erroneously substituted her opinion for that of Dr. Jemsek" in finding that Plaintiff does not have Lyme disease. *Id.*

The record does not support this argument. As explained above, Dr. Blake at Emory told Plaintiff his illness was not compatible with Lyme disease. R. 1001. Additionally, when Plaintiff saw Dr. Smith, the rheumatologist at UAB, Dr. Smith concluded, "Based on only one+ band on the IgG portion of the WB, the current Lyme WB is negative. I have also reviewed this topic with ID at UAB. There is no epidemiologic evidence of Lyme in the SE USA. Also, his fatigue non-specific symptoms are not indicative of Lyme disease." R. 795. Dr. Smith also explained that, in patients with a positive serologic test such as Lyme disease, "it is important to know that these antibodies may be present in healthy adults; therefore, the presence of these antibodies alone does not confirm a diagnosis of an active autoimmune disease in the absence of characteristic exam and lab findings." *Id*.

Based on the opinions of Drs. Blake and Smith, the Court concludes that the ALJ did not "blatantly and erroneously" substitute her own opinion for that of a physician. As Plaintiff admits, the record shows only that Dr. Jemsek *suspected* Plaintiff of having Lyme disease, and his suspicions were based on Plaintiff's reported symptoms. R. 568. The

opinions of Dr. Blake and Dr. Smith were based on objective testing and consultation with the Plaintiff, and their opinions are substantial evidence supporting the determination that Plaintiff does not have Lyme disease. Moreover, this determination comports with 20 C.F.R. § 404.1521, which requires that an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The Commissioner] will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." As with rheumatoid arthritis, the record contains multiple statements by Plaintiff that he has Lyme disease, but those statements are insufficient to establish an impairment and have been contradicted by Plaintiff's doctors.

      **C.    Failure to Obtain a Medical Expert Opinion**

In his final argument, Plaintiff claims his medical history is "complicated" and that a medical expert "would have been helpful in resolving ambiguities." Doc. 6 at 7. He argues that an ALJ's duty to develop the record is "triggered by ambiguous evidence or a record inadequate to allow for proper evaluation." *Id.* at 7. He notes an ALJ's duty to obtain missing information when a consultative evaluation is incomplete, but he fails to point to any ambiguities in the record, describe information that is missing, and or identify claimed impairments that required further evaluation. The Court finds that Plaintiff's failure to include argument, citations to the record, or citations to relevant legal authorities

constitutes an abandonment of this claim, but it will again address the issue for the sake of caution.

The law is well settled that an ALJ bears the duty to develop a full and fair record. *Whatley v. Berryhill*, No. 17-CV-490-B, 2019 WL 1403303, at *12 (S.D. Ala. Mar. 28, 2019) (citing *Ellison v. Barnhart*, 355 F. 3d 1272, 1276 (11th Cir. 2003)). The ALJ must order a consultative examination if the record shows an examination is required to render a decision. *Id.* (citing *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). A consultative examination is not required if the record contains sufficient evidence to make an informed decision. *Id.* (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F. 3d 1253, 1269 (11th Cir. 2007)). Moreover, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Id.* (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). The court reviews the record to determine if there are "evidentiary gaps" that resulted in "unfairness or clear prejudice." *Id.* (citations and quotations omitted). Courts have rejected the argument that an ALJ's RFC is not supported by substantial evidence merely because the record does not include an RFC by an examining physician. *Id.* (citing *Reed v. Berryhill*, 2017 WL 3977924, at *3 (S.D. Ala. Sept. 11, 2017)).

Plaintiff cites *Hernandez v. Barnhart*, 203 F. Supp. 2d 1341, 1355 (S. D. Fla. 2002) in support of his argument that reversal is required when an ALJ "play[s] the role of medical expert" and acts as "both judge and physician" by interpreting raw medical data. Doc. 9 at 7. However, he fails to compare any facts in *Hernandez* to the facts of this case

or otherwise explain how it applies here. In *Hernandez*, the claimant had been under no treatment, and there were no medical source statements from treating sources. *Hernandez*, 203 F. Supp. 2d at 1355. Consultants who tested the claimant said her cognitive deficits would affect her ability to function in most job environments but offered no specific details. *Id.* The ALJ accepted the RFC of a non-examining state agency physician because it was consistent with medical evidence, but some of the ALJ's findings did not match the physician's RFC. With no treatment records, no functional limitations assessment by an examining source, and an RFC by the ALJ that did not match the only functional limitations assessment in the record, the Court ruled the ALJ erred in not obtaining a medical source statement from the consultants who actually examined Plaintiff, finding that the ALJ "played the role of medical expert, interpreted raw psychological and medical data, and drew her own conclusions as to the claimant's RFC." *Id.*

More recently, in *Moseley v. Colvin*, No. 2:13-CV-328-TFM, 2014 WL 1320238 (M.D. Ala. Mar. 31, 2014), where a plaintiff relied on *Hernandez* for the proposition that an RFC assessment must be supported by a treating or examining physician's RFC, this Court held:

> [I]n *Packer v. Astrue,* 2013 WL 593497, *3 (S.D. Ala. Feb. 14, 2013), the court rejected the absolutism of requiring a RFC assessment by a treating physician, noting that "numerous courts had upheld ALJ's determinations notwithstanding the absence of an assessment performed by an examining or treating physician." Like those other courts, this court rejects the seemingly mandatory requirement that the Commissioner's fifth-step burden must be supported by an RFC assessment of a physician. The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of Moseley's residual functional capacity. Thus, she was not required to secure a residual functional capacity assessment from a medical source.

*Id*. at \*5; *see also Rhoney v. Astrue*, No. CV 111-011, 2012 WL 2128101, at \*8 (S.D. Ga. May 14, 2012), *report and recommendation adopted,* No. CV 111-011, 2012 WL 2127492 (S.D. Ga. June 12, 2012) (comparing *Hernandez* and finding no basis for remand when ALJ's RFC was consistent with state agency physicians); *Greene v. Colvin*, No. 2:14-CV-00799-JEO, 2015 WL 4067811, at \*3–4 (N.D. Ala. July 1, 2015) (recognizing that an ALJ does not have to order a consultative examination unless the record contains insufficient evidence to make an informed decision). Thus, the law does not require an ALJ to obtain a medical expert if the record is sufficient.

Moreover, unlike *Hernandez*, the record in this case is not lacking; it contains medical records from treating doctors going back approximately eighteen months before the alleged onset date, and it contains the opinions of a treating physician and a non-examining, consulting state agency physician.[6] The medical records show that Plaintiff had back surgery in May 2014 and that a few days after surgery he reported his leg pain had completely resolved. R. 353. Records following the revision laminectomy reflect a normal lumbar exam (except for weakened hip flexion and abduction), improved pain and ability to walk, and no post-surgical changes. *Id*. at 990. Records a few months after the revision surgery reflect that he was in no obvious distress and that he had full range of motion, full strength, a normal gait and reflexes, and negative Rhomberg and Babinski tests. *Id*. at 649–

---

[6] The Appeals Council found that Plaintiff has the severe impairments of degenerative disc disease, degenerative joint disease, hypertension, depression, and anxiety. Plaintiff's brief does not mention hypertension, and he makes only two cursory statements that he *has* depression and anxiety. Doc. 9 at 2, 5. Plaintiff failed to identify how the record is insufficient and made no argument the evidence of these impairments is ambiguous.

61. Finally, as discussed above, the record shows Plaintiff did not have Lyme disease or rheumatoid arthritis.

As for opinion evidence, after the surgery in May 2014, Plaintiff's surgeon released him to full duty work with no restrictions.[7] *Id*. at 264–67, 412. This assessment by Plaintiff's treating physician was supported by later objective medical evidence and given great weight. *Id*. at 27. The record also contains the opinion of a state agency consultant, and that opinion is consistent with Plaintiff's release to full duty following the first surgery, Dr. Boden's statement that he had no post-surgical changes and that his leg pain and ability to walk had improved, and frequent findings throughout the record that Plaintiff maintained full strength and range of motion with normal tone, reflexes, and gait. The state agency consultant assessed Plaintiff's functional limitations and found that he could perform light work consistent with the limitations assessed by the Appeals Council. *Id*. at 74–75. Because the state agency consultant's opinion was fully consistent with the other medical evidence and opinions in the record, it was assigned great weight. *Id*. at 27. *See Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (finding that ALJ did not err in relying on non-examining physician's report because it was consistent with opinions of examining physicians and other medical evidence).

---

[7] Although not referenced by the ALJ or parties, the record contains a note from Dr. Phillip Golomb, Plaintiff's primary care physician, dated May 22, 2014, indicating that he had been treating Plaintiff since February 2014 and that he could return to light duty in July and full duty in September. R. 358. As mentioned above, Dr. Epperson, Plaintiff's neurologist, also stated in June 2014 that Plaintiff could return to light work for four weeks and then return to full duty. R. 974.

Accordingly, based on the medical evidence and opinion evidence in the record, it is clear to the Court that the record in this case was sufficient to make an informed decision and that the failure to obtain a medical expert was not error.

## VI.   CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 30th day of March, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE